IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



MATTHEW D. UPPERMAN,	)
	)
    Plaintiff,	)
	)
v.	)   Civil Action No.# 01:10-cv-149
	)
DEUTSCHE BANK NATIONAL TRUST	)
COMPANY, et al.	)
	)
    Defendants.	)
	)

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motions to Dismiss. Plaintiff Matthew Upperman failed to pay his mortgage and, despite a subsequent foreclosure sale, has not vacated the property. Plaintiff claims title to the property based on the legal theory that securitization of his mortgage loan renders his note unenforceable.

Plaintiff alleges that he entered into a "consumer credit transaction" to purchase his home, 21025 Laporte Terrace, Ashburn, Virginia 20147 (the "Property"). At the closing, on March 23, 2006, Plaintiff executed two promissory notes and deeds of trust that placed a security interest in the Property. For the first note for $413,600, UMG Mortgage LLC was the initial lender and MERS was the beneficiary. The Allonge shows that this note was subsequently transferred to IndyMac Bank, F.S.B. The first

note is the only loan at issue in this case, as it is the one secured by the Deed of Trust under which the foreclosure occurred.

According to the Complaint, Plaintiff also executed a second note for $103,400 with OneWest's predecessor in interest, IndyMac Bank, F.S.B., as the initial lender. The Plaintiff alleges that the loans were then "securitized" by being placed in a "loan trust, pool, or REMIC (real estate mortgage investment conduit)."

In 2008 and continuing into 2009, Plaintiff began to receive demands for payment on the first note. In advance of foreclosure, Equity Trustees LLC was appointed the Substitute Trustee under the Deed. The Plaintiff was declared to be in default of the note and on August 27, 2009, Equity Trustees LLC gave notice that the Property would be sold at foreclosure sale. The Property was sold in foreclosure to Defendant Shan Lin on September 9, 2009. The Deed explicitly allows the sale and transfer of the Note (together with the Deed), without prior notice to the Borrower.

Plaintiff filed the instant Complaint on December 23, 2009 in the Circuit Court for Loudoun County, Virginia. Defendants timely removed this action to this Court on February 18, 2010.

A federal district court should grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). While the

Court must take all factual allegations made in a complaint as true, see Eastern Shore Markets, Inc. v. JD Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000), the United States Supreme Court heightened a plaintiff's pleading requirements in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). In order to survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true. . . ." 550 U.S. at 555 (Internal citations omitted). Indeed, the Fourth Circuit has concluded that the Supreme Court's decision in Twombly establishes a regime that is "more favorable to dismissal of a complaint." Giarratano v. Johnson, 521 F.3d 298, 304 n.3 (4th Cir. 2008).

Specifically, a plaintiff's claim must be dismissed if he fails to allege "enough facts to state a claim to relief that is plausible on its face" such that he has "nudged [his] claims across the line from conceivable to plausible. . . ." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

In Iqbal, the Court established a two-step approach for determining whether a complaint may survive dismissal. First, a

district court need not accept legal conclusions as true, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, Id. at 1949. Second, only a complaint that states a plausible claim for relief should survive a motion to dismiss, and making such a determination is a "context-specific" task where the court must apply its judicial experience and common sense. Id. at 1950. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Here, Plaintiff's Complaint is comprised entirely of legal conclusions which are not entitled to the assumption of truth and must be disregarded. The same erroneous legal theory forms the basis for all of Plaintiff's claims: that Defendants have no legal authority or standing under the security instrument to foreclose upon the Property because the alleged securitization of a mortgage loan purportedly renders a Note unenforceable and unsecured. There is no legal authority that the sale or pooling of investment interests in an underlying note can relieve borrowers of their mortgage obligations or extinguish a secured party's rights to foreclose on secured property. Plaintiff's theory contradicts not only Virginia's well-established status as a non-judicial foreclosure state, but also the authority vested

in a trustee under Virginia law to foreclose and sell property that is provided as security for a loan. See VA. CODE ANN. §§ 55-59.1-59.4. In addition, the Deed clearly confers authority on Defendants to foreclose on the Property in the event of Plaintiff's default is undisputed.

As a threshold matter, there are no specific factual allegations in the Complaint supporting any of Plaintiff's claims for relief as to Deutsche Bank and MERS, other than to briefly identify these entities and allege that MERS failed to disclose that the loans may be securitized. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Here, none of Plaintiff's counts are supported by any pertinent factual allegations.

The Plaintiff's claims for Declaratory Action (Counts I and II), Breach of Fiduciary Duties (Count III), Quiet Title (Count IV), and Violation of the FDCPA (Count V) - are based on the erroneous legal theory that the securitization of a mortgage loan renders a note and corresponding security interest unenforceable and unsecured.

Plaintiff argues that his obligation to perform on the Note was relieved by the individual investors in the trust and, for this reason, Plaintiff need not repay his mortgage loan but may

hold on to the Property. There is no authority, however, that the mere existence of a pooling and servicing agreement or investment trust can relieve borrowers of their obligations to perform under a duly executed promissory note and deed of trust.

On the contrary, federal laws explicitly allow for the creation of mortgage-related securities, such as the Securities Act of 1933 and the Secondary Mortgage Market Enhancement Act of 1984. Indeed, pursuant to 15 U.S.C. § 77r-1, "[a]ny person, trust, corporation, partnership, association, business trust, or business entity . . . shall be authorized to purchase, hold, and invest in securities that are . . . mortgage related securities." Id. § 77r-1(A)(1)(B). Even if the Note was securitized, Plaintiff's claim that such securitization renders the Notes and Deeds of Trust unenforceable is legally flawed. As such, both declaratory judgment actions, Counts I and II, seeking to invalidate the Notes on this legal theory are baseless. Count IV, which is a quiet title action is based on the same legal theory, and likewise fails.

Plaintiff's legal theory that Defendants do not have the right to enforce the Deed given as security for the Note also is contrary to Virginia law and the language contained in the Deed. Specifically, Plaintiff alleges that an assignment of the Note would "split" it from the underlying security interest, such that the Note becomes unenforceable. Under Virginia law, however, the

assignment or transfer of a note or bond secured by a deed of trust or mortgage "carries with it" that security. Stimpson v. Bishop, 82 Va. 190, 200-01 (1886) ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery.") "[I]n Virginia, as to common-law securities, the law is that both deeds of trust and mortgages are regarded in equity as mere securities for the debt, and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it." Williams v. Gifford, 139 Va. 779, 780, 124 S.E. 403, 404 (1924). If there has been a "split" between the Note and Deed, as alleged by Plaintiff, the transferee of the Note nevertheless receives the debt in equity as a secured party. See id.

Plaintiff agreed when he executed the loan documents that the Note or interests in the Note could be sold "one or more times without prior notice to the Borrower." To the extent Plaintiff challenges the appointment of the substitute trustee, nothing in the Deed states, either explicitly or implicitly, that only the original Lender may appoint substitute trustees. Rather, the Deed explicitly allows the sale and transfer of the Note, even without prior notice to the Borrower.

Plaintiff's "standing" argument is equally unpersuasive. According to Plaintiff, Defendants have no legal authority or "standing" under the security instrument to

foreclose upon the Property because the loan has been securitized. Under Plaintiff's theory, every foreclosing party would have to prove its "standing" or authority in court and prior to foreclosure, and would be unable to do so if the loan is securitized. As a threshold matter, Plaintiff misuses the term "standing" in referring to a secured party's "authority" to foreclose upon a property, rather than its actual meaning of a party's standing to file an action in state court. These arguments fail to recognize that both Federal Rule 17 and "standing," as termed by Plaintiff, are irrelevant to Defendants' authority to initiate non-judicial foreclosure proceedings.

In any event, Plaintiff's legal theory contradicts Virginia's well-established status as a non-judicial foreclosure state, as well as the authority vested in a trustee under Virginia law to foreclose and sell property that is provided as security for a loan. See VA. CODE §§ 55-59.1-59.4. Under these procedures, in the event of default by a borrower, a trustee under a Deed of Trust may "declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same . . ." VA. CODE ANN. § 55-59(7). These procedures are also set forth in the Deed. Plaintiff's Complaint acknowledges that Defendants complied with these procedures when the appointed substitute trustee sent demands for payment and foreclosed on the Property.

To the extent Plaintiff applies this same legal theory in an attempt to undermine the appointment of a substitute trustee, such theory also contradicts Virginia law: "The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee . . . by executing and acknowledging an instrument designating and appointing a substitute . . . [which] shall be vested with all the powers, rights, authority and duties vested in the trustee . . . in the original deed of trust." VA. CODE ANN. § 55-59(9). Yet Plaintiff has not alleged the Deed of Appointment of Substitute Trustee is void. The Complaint contains no allegations that the substitute trustee was appointed by anyone other than "the party secured by the deed of trust, or holders of the greater than fifty percent of the monetary obligations secured thereby." Id. Plaintiff's Complaint lacks sufficient factual allegations and Plaintiff's novel "standing" argument is completely inconsistent with Virginia's statutory framework for non-judicial foreclosures.

In the alternative, Count V, "Violation of the FDCPA" should be dismissed because Plaintiff's FDCPA claim is barred by the one-year statute of limitations imposed by the FDCPA. Plaintiff's FDCPA claims are absolutely time-barred. An action brought pursuant to the FDCPA must be brought within one year of the date on which the alleged violation occurred. See 15 U.S.C. §

1692k(d). Even assuming that Defendants failure to inform Plaintiff that the Note would be securitized constitutes an FDCPA claim, Plaintiff's claim is nevertheless time-barred because it accrued at the time the loan was settled in 2006. Yet Plaintiff did not file his Complaint until December 2009, more than three years after settlement. Accordingly, any FDCPA claim is time-barred.

Finally, Count III of the Complaint alleges that Equity Trustees breached a fiduciary duty to the Plaintiff by "failing to perform reasonable due diligence" and "failing to remain impartial." However, a trustee under a deed of trust has no such duties. See Carter v. Countrywide Home Loans, Inc., No. 3:07-cv-651, 2008 WL 4167931, at *11 (E.D. Va. Sept. 3, 2008) ("[T]he trustee only owes those duties that are listed in the deed of trust itself.")(citing Belvin's Ex'r v. Belvin, 167 Va. 355, 189 S.E. 315, 318)); See also Fleet Finance v. Burke & Herbert Bank & Trust, 1992 WL 884461, at *3 (Va. Cir. Ct. Jan. 28, 1992). Plaintiff does not allege that the Deed of Trust lists either of these duties and the Deed of Trust does not, in fact, list either of these duties. Because no such duties exist they could not have been breached by Equity Trustees.

For these reasons, Defendants' Motions to Dismiss should be GRANTED. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
April /6/, 2010